UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JERON TORI FRAIRSON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 4:22-cv-00936-ACL |
| ) | |
| KELLY MORRISS,[1] ) | |
| ) | |
| Respondent. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on the Petition of Jeron Tori Frairson for a Writ of Habeas Corpus under 28 U.S.C. § 2254.

**I.  Procedural History**

Frairson is currently incarcerated at the Jefferson City Correctional Center in Jefferson City, Missouri, pursuant to the sentence and judgment of the Circuit Court of the City of St. Louis, Missouri.  (Doc. 6-2 at 81–84.)

After a jury trial, Frairson was found guilty of second-degree murder, armed criminal action, first-degree assault, and armed criminal action.  *Id.* at 69–72.  The court sentenced him to four consecutive terms of life imprisonment.  *Id.* at 82–83.

Frairson raised five points in his direct appeal of his convictions.  Frairson first argues that the trial court erred in overruling his motion to suppress evidence of photo lineup identifications

---

[1] Petitioner is incarcerated at the Jefferson City Correctional Center (JCCC) in Jefferson City, Missouri. JCCC's Warden, Kelly Morriss, should be substituted for Doris Falkenrath as proper party respondent. Rule 2(a), Rules Governing Section 2254 Cases in the United States District Courts.

1

he claimed were impermissibly suggestive. (Doc. 6-3 at 18.) Next, Frairson argues that the trial court erred by permitting a detective to testify at trial as to statements made by an anonymous caller who himself was not called to testify. *Id.* at 19. Frairson's third argument is that the trial court erred in overruling his objections under *Batson v. Kentucky*, 476 U.S. 79 (1986) (hereinafter "*Batson*") to the State's peremptory strikes of three African-American venirepersons. (Doc. 6-3 at 20.) Fourth, Frairson argues that the trial court erred in failing to declare a mistrial or take other curative action following certain statements in the prosecutor's closing arguments. *Id.* at 21. Frairson's fifth and final arguments are that the trial court erred in failing to declare a mistrial or take other curative action after Frairson appeared handcuffed before the jury. *Id.* at 22. On February 13, 2018, the Missouri Court of Appeals affirmed Frairson's convictions. (Doc. 6-5 at 1.)

Frairson filed a *pro se* motion for post-conviction relief under Rule 29.15. (Doc. 6-6 at 1.) Following an appearance from counsel, an amended post-conviction relief motion was filed. *Id.* In his amended motion, Frairson raised the following ineffective assistance of counsel claims: (1) trial counsel was ineffective for failing to call two particular individuals as witnesses; (2) trial counsel was ineffective for failing to properly litigate a *Batson* motion; (3) trial counsel was ineffective for failing to preserve the *Batson* issue for appeal; (4) trial counsel was ineffective for failing to obtain information from Frairson's cell phone to show his location at the time of the crime; and (5) trial counsel was ineffective for failing to object to the use of Frairson's juvenile record at his sentencing. *Id.* at 5. The court denied this motion following an evidentiary hearing. *Id.* at 18.

In his appeal from the denial of post-conviction relief, Frairson argued that the motion court erred in denying relief because he established that he received ineffective assistance of counsel

when his counsel failed to investigate and call witness Keithron Gaffread. (Doc. 6-8 at 14.) On August 10, 2021, the Missouri Court of Appeals affirmed the decision of the motion court. (Doc. 6-10 at 1.)

Frairson filed the instant Petition on September 7, 2022, in which he raises the following grounds for relief: (1) the trial court erred in overruling a motion to suppress evidence of witnesses' lineup identifications; (2) the trial court erred in admitting testimony about statements made by an anonymous phone caller; (3) his rights under the Equal Protection Clause were violated by the State's use of peremptory challenges to remove African-American venirepersons from the jury; and (4) the trial court erred in failing to declare a mistrial. (Doc. 1.)

## II. Facts[2]

Viewing the evidence in the light most favorable to the verdict, on December 15, 2014, after getting off work, Daniel Parrot picked up Chelsea Harris, his girlfriend, from her school. When he got to his house, Daniel got out of the car, and he saw Frairson at the end of the block. Frairson pulled out a semiautomatic gun and fired it. Daniel started to run, and he told Chelsea to run. Daniel heard several shots fired, and he was shot in the leg. Daniel's leg broke while he attempted to get over a fence, and after Daniel fell to the ground Frairson shot him twice at close range.

Police responded to the shooting, and when they arrived at the scene they found Daniel lying on the ground with a blanket over him. Leonard Parrot, Daniel's father, came out of a house and informed the police there was another gunshot victim inside the house. Inside the house police

---

[2] The Court's summary of the facts is taken from the decision of the Circuit Court of the City of St. Louis, Missouri denying Frairson's Rule 29.15 motion for post-conviction relief. (Doc. 6-6 at 2–4.)

found a second victim, Daniel's girlfriend Chelsea Harris, who died at the scene. Daniel was hospitalized for his injuries.

A description of the person suspected of being the shooter was assembled based on information provided by Daniel Parrot, Leonard Parrot, and a neighbor, Krystal Harris.

Leonard Parrot testified at the trial that he heard shots fired while he was in the house, he went outside, and saw the shooter. While he was going outside, Chelsea Harris ran up the stairs. Leonard saw Daniel on the ground at the end of the block and Leonard chased after the shooter. Leonard provided a description of the shooter to the police.

Krystal Harris initially said she saw the shooting through a window, but at the trial she testified that she saw a substantial portion of the shooting while outside behind a dumpster. Krystal Harris provided a description of the shooter to the police.

Daniel Parrot provided a description of the shooter to the police while he was in the hospital, and he identified the shooter as "Little Tori." Daniel told detectives where Frairson lived, and he identified Frairson from a photo lineup as the man who shot him.

Two police officers testified for the defense that Krystal Harris told them she observed the shooting from inside her residence through a window. Another police officer testified for the defense that he interviewed Daniel at the hospital and Daniel did not tell him the name of the shooter.

Frairson's mother testified at the trial that Frairson was at home with her on the date of the incident. She acknowledged Frairson's nickname was "Little Tori." The State called the payroll manager for Frairson's mother's employer in rebuttal. The payroll manager said Frairson's mother had worked from 9 a.m. to 5:33 p.m. on the date of the incident, and she would have had to clock herself in and out. The shootings occurred during this period of time she was at work.

4

Frairson did not testify at his trial.

### III.  Standard of Review

A federal court's power to grant a writ of habeas corpus is governed by 28 U.S.C. § 2254(d), which provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The Supreme Court construed Section 2254(d) in *Williams v. Taylor*, 529 U.S. 362 (2000). With respect to the "contrary to" language, a majority of the Court held that a state court decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or if the state court "decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Id.* at 405. Under the "unreasonable application" prong of § 2254(d)(1), a writ may issue if "the state court identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies [the principle] to the facts of the particular state prisoner's case." *Id.* Thus, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 410. Although the Court failed to specifically define "objectively unreasonable," it observed that "an unreasonable application of federal law is different from an incorrect application of federal law." *Id.* at 410.

5

### IV.  Petitioner's Claims

The undersigned will discuss Frairson's four grounds for relief in turn.

**1.  Ground One**

In his first ground for relief, Frairson argues that the trial court erred in overruling a motion to suppress evidence of the out-of-court lineup identifications by Krystal Harris and Leonard Parrot.  Frairson contends that the identifications of him by these witnesses were the result of improper police suggestion because he was the only person in the lineup wearing red clothing.  (Doc. 1 at 5.)  He claims that this "tended to isolate me and draw attention to me it [sic] was the same color police was [sic] told the shooter was wearing its [sic] to suggest [I] was the person of interest."  *Id.*

Respondent argues that this claim is procedurally defaulted and fails on its merits.  (Doc. 6 at 10, 15.)

Frairson raised this issue on direct appeal.  (Doc. 6-3 at 18.)  Because Frairson did not timely object during trial, the Missouri Court of Appeals found the issue was not preserved for appeal, and was able to review for clear error only.  (Doc. 6-5 at 4.)  The Court concluded that the trial court did not clearly err in denying Frairson's motion to suppress evidence of the witnesses' lineup identifications.  *Id.* at 7.

When a state court decides a claim on state procedural grounds, rather than on the merits, federal habeas review is barred, because the state court decision rests on independent and adequate state procedural grounds.  *Coleman v. Thompson*, 501 U.S. 722, 730 (1991).  A state court's discretionary plain-error review of unpreserved claims does not excuse a petitioner's procedural default.  *Clark v. Bertsch*, 780 F.3d 873, 876–77 (8th Cir. 2015).  Therefore, this Court is barred from reviewing Frairson's claim unless he "can demonstrate cause for the default and actual

6

prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Id.* at 750. Petitioner has not done so.

Frairson's claim also fails on its merits. In its analysis, the Missouri Court of Appeals determined that the witnesses' identifications of Petitioner in the police lineup were not due to improper police suggestion, and that Petitioner's red clothing was not a determining factor in the witnesses' identification of him. Specifically, the Court concluded:

> [Frairson] failed to show that [the witnesses'] identifications were based solely, or even at all, on [Frairson] being dressed in red. [Frairson] wearing red in the photo lineup was not a focal point of their identifications. The witnesses had an adequate basis for their identifications, independent of the lineup – namely their encounters and close physical proximity to [Frairson] at the time of the shooting. Further, the identifications were made based upon the witnesses' own recollections and observations of [Frairson] and were not made in response to any suggestions or encouragement by the police, or as a result of any improper comments or activity on the part of the officer showing the photograph. The lineup was not unduly suggestive, and thus the identifications were admissible.

(Doc. 6-5 at 7.)

As an initial matter, "'[q]uestions regarding admissibility of evidence are matters of state law, and they are reviewed in federal habeas inquiries only to determine whether an alleged error infringes upon a specific constitutional protection or is so prejudicial as to be a denial of due process.'" *Rousan v. Roper*, 436 F.3d 951, 958 (8th Cir. 2006) (quoting *Logan v. Lockhart*, 994 F.2d 1324, 1330 (8th. Cir. 1993)). Denial of due process is established by "proving that the asserted error was 'so conspicuously prejudicial or of such magnitude that it fatally infected the trial and deprived [the defendant] of fundamental fairness.'" *Logan*, 994 F.2d at 1330 (quoting *Ferguson v. Jones*, 905 F.2d 211, 213 (8th Cir. 1990)).

The reasoning of the Missouri Court of Appeals suggests there was no error at all, let alone an error of such a magnitude that it deprived Frairson of "fundamental fairness." *Id.* The Court

7

provided multiple explanations as to why Frairson's clothing in his police lineup was not a factor in witnesses' identifications of him, and Frairson has provided no evidence to the contrary. This Court cannot conclude that the Missouri Court of Appeals' reasoning is clearly erroneous and unworthy of deference under 28 U.S.C. § 2254(d). To the contrary, the Court's determination is reasonable, and Frairson has failed to show that this police lineup identification violated his constitutional rights.

Accordingly, Ground One will be denied.

**2. Ground Two**

In his second ground for relief, Frairson argues that the trial court erred in permitting a detective's testimony regarding statements made by an anonymous phone caller. (Doc. 1 at 7.) During the trial, Detective Tracy Chaney of the St. Louis Police Department testified that an anonymous person (who himself did not testify) called in a tip and identified Petitioner as the shooter. (Doc. 6-1 at 433–34.) According to Petitioner, this was improperly admitted hearsay evidence, and it constituted a "backdoor attempt" to prevent him from confronting this anonymous witness, thus violating his rights under the Confrontation Clause of the Sixth Amendment to the U.S. Constitution. (Doc. 1 at 7.)

Frairson raised this issue on direct appeal. (Doc. 6-3 at 19.) The Missouri Court of Appeals held that Petitioner did not preserve this issue for appeal because of both a failure to timely object during trial and to include this issue in his motion for a new trial. (Doc. 6-5 at 8.) The Court also concluded that Frairson's claim failed on its merits. *Id.* at 8–10.

Because the Missouri Court of Appeals decided this issue on procedural grounds, federal habeas review is again barred. *Coleman*, 501 U.S. at 730. This Court thus cannot review Frairson's claim unless he "can demonstrate cause for the default and actual prejudice as a result

8

of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Clark*, 780 F.3d 876–77.  Petitioner has not done so.

Frairson's claim also fails on its merits.  The Missouri Court of Appeals concluded that the statements made by the anonymous caller that were offered in court via Detective Chaney's testimony were not hearsay because they were not offered for the truth of the matter asserted, but rather to explain subsequent police conduct.  (Doc. 6-5 at 9.)  This accords with the trial record during the state's direct examination of Detective Chaney:

> [**Frairson's Counsel**]:  Objection, calls for hearsay.
>
> **The Court**:  Your response.
>
> [**Prosecution**]:  Your Honor, he is talking about what investigation he did.  Not what anybody else said.
>
> **The Court**:  Are you offering it to show subsequent conduct or are you offering for the truth?
>
> [**Prosecution**]:  I'm offering it for subsequent conduct.
>
> **The Court**:  It will be allowed for that reason.

(Doc. 6-1 at 435.)

Because "non-hearsay out-of-court statements do not implicate the Confrontation Clause," this testimony did not violate Petitioner's Sixth Amendment rights.  *United States v. Young*, 753 F.3d 757, 772 (8th Cir. 2014) (citing *United States v. Yielding*, 657 F.3d 688, 700 (8th Cir. 2011)).

Additionally, the Missouri Court of Appeals found that Petitioner was not prejudiced by the admission of this testimony because "[t]he record shows that [Frairson's] trial strategy was to use the anonymous call as a suggestive source upon which the three identifications were erroneously based." (Doc. 6-5 at 10–11.)  This similarly accords with Frairson's attorney's closing

9

argument at trial, in which she suggests Leonard Parrot's identification of Frairson was influenced by the anonymous caller:

> [Leonard Parrot] said in his own words, I could find out who did it.  That's what he tried to do.  But unfortunately that's what tainted his ability to tell you who did it because when he sat and he looked at that photo lineup where whose picture stands out, but [Frairson's].  ***[Leonard Parrot] is not going off of what happened that day.  He is going off of all the information that has been given to him.  We know that someone called the police station and we know that they implied Little Tori did it.***

(Doc. 6-1 at 549) (emphasis added).

Because this is a question regarding the admissibility of evidence, it is analyzed "'only to determine whether an alleged error infringes upon a specific constitutional protection or is so prejudicial as to be a denial of due process.'"  *Rousan*, 436 F.3d at 958 (quoting *Logan*, 994 F.2d at 1330).  Denial of due process is established by demonstrating that such error "'deprived [the defendant] of fundamental fairness.'"  *Logan*, 994 F.2d at 1330 (quoting *Ferguson*, 905 F.2d at 213).

Frairson has failed to demonstrate that the Missouri Court of Appeals, in upholding the trial court's decision to admit Detective Chaney's testimony, made an error of any sort, let alone one that rises to the level of depriving him of fundamental fairness.  He has further failed to show that the Court unreasonably applied clearly established federal law.  The Court accurately concluded that the testimony was admitted for non-hearsay purposes and thus did not violate Frairson's rights under the Confrontation Clause.  Frairson also attempted to utilize the testimony for his own advantage by implying it influenced at least one witness to identify him as the shooter.

Accordingly, Ground Two will be denied.

### 3. Ground Three

In his third ground for relief, Frairson argues that the trial court erred in permitting, over defense counsel's *Batson* challenges, the State's peremptory strikes of three African American venirepersons.  (Doc. 1 at 8.)  Frairson argued on direct appeal that the state's proffered reasons for striking these venirepersons were pretextual.  (Doc. 6-3 at 20.)  The Missouri Court of Appeals held that Frairson procedurally defaulted this claim, and therefore declined to consider the merits of the claim.

Federal law is well-settled that the Equal Protection Clause forbids a prosecutor from using peremptory challenges to exclude otherwise qualified persons from the jury based solely on their race.  *Devose v. Norris*, 53 F.3d 201, 204 (8th Cir. 1995).  "[T]he Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant."  *Batson*, 476 U.S. at 89.  In *Batson*, the United States Supreme Court held that "in order to establish an equal protection violation, a defendant must first establish a prima facie case of purposeful discrimination in the selection of the jury panel."  *Id.* at 96.  Indeed, it is the defendant's burden "to prove the existence of purposeful discrimination."  *Id.* at 93.

*Batson* provides a three-step process to determine the validity of peremptory strikes by the prosecutor: (1) the defendant must make a prima facie showing that the state exercised a peremptory strike because of race; (2) if such a showing is made, the burden shifts to the state to articulate a race-neutral explanation for striking the prospective juror; and (3) the trial court must decide whether the defendant has proven purposeful discrimination.  *Id.* at 96–98.  "A neutral explanation in this context means an explanation based on something other than the race of the juror.  At this step of the inquiry, the issue is the facial validity of the prosecutor's explanation.

11

Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Hernandez v. New York*, 500 U.S. 352, 360 (1991).

Each of the three steps of *Batson* inquiry involves a determination of fact, and therefore habeas review turns on whether the state court decision was based upon an unreasonable determination of the facts. *Weaver v. Bowersox*, 241 F.3d 1024, 1030 (8th Cir. 2001). Such review presumes that the state courts found the facts correctly, unless the petitioner rebuts that presumption with clear and convincing evidence. *Id.* A federal court's review of the trial court's determination of a *Batson* challenge is particularly deferential:

> We regularly defer to the fact-findings of trial courts because those courts are uniquely positioned to observe the manner and presentation of evidence. Our deference to trial court fact-finding is doubly great in the present circumstance because of the "unique awareness of the totality of the circumstances surrounding voir dire," and because of the statutory restraints on the scope of federal habeas review.

*Id.* (citing *United States v. Moore*, 895 F.2d 484, 486 (8th Cir. 1990)). Even erroneous fact finding on the part of a state court does not justify granting a federal writ of habeas corpus if the court erred "reasonably." *Id.*

At trial, Petitioner brought *Batson* challenges against the State's exclusion of three potential African-American jurors: Venirepersons Ward, Miller, and Moore.

With respect to Venireperson Ward, the State claimed this venireperson was struck because he expressed a desire to be presented with motive as part of evidence, and the State was concerned Venireperson Ward would require motive in order to reach a guilty verdict. (Doc. 6-1 at 211.) In response, defense counsel argued, "[a]gain he indicated he would not require motive but that he would like it. A lot of jurors said there were things they would like, but they would be willing to follow the law. He did indicate he would follow the law." *Id.* at 211–12. The trial judge concluded

12

that the State's explanation did not "rise[] to the level of even a suggestion as pretextual…," and denied defense counsel's *Batson* challenge. *Id.* at 212.

With respect to Venireperson Miller, the State claimed this venireperson was struck because she had a relative who either had been accused of murder or was murdered, and that her clarification questions during jury proceedings gave the State concern that she may not be able to follow the Court's instructions. *Id.* at 209. In response, defense counsel argued:

> I did notice that she asked a lot of questions. She was also called on a lot by counsel, specifically who would use her scenario, well, if you had Ms. Miller, Ms. Miller. I think she was engaged by the State, that's why she spoke all the time. So to challenge her for that reason sounds pretextual.

*Id.* at 210. The trial judge concluded that the State's reasons were non-discriminatory and denied defense counsel's *Batson* challenge. *Id.* at 209–10.

With respect to Venireperson Moore, the State claimed this venireperson was struck because he expressed skepticism towards the police. (Doc. 6-1 at 210.) In response, defense counsel stated the following: "I actually spoke to him after that because there seemed to be some confusion at that time during voir dire, and I asked if he could be fair and if he would require anything additional besides the elements to be proven and he said he would not." *Id.* The trial judge found that the State's explanation was not pretextual and denied defense counsel's *Batson* challenge. *Id.* at 209–10.

This Court finds that the trial court's rulings on Frairson's challenges to Venirepersons Ward, Miller, and Moore were not contrary to, and did not involve an unreasonable application of, clearly established federal law; nor were they based on unreasonable determinations of the facts in light of the evidence presented at trial. Each of the State's proffered reasons for striking the venirepersons was race-neutral because discriminatory intent was not "inherent in the prosecutor's explanation[s]," and defense counsel's counterarguments did not raise a reasonable suspicion that

13

the State's reasoning was pretextual. *Hernandez*, 500 U.S. at 360. Consequently, this Court will not grant habeas relief on this ground.

The undersigned also notes that in the "Supporting facts" section of Frairson's Petition for habeas relief, he states that Venireperson Miller was struck by the State "out of concern over the number of question[s] she asked and [whether] she would be able to follow various jury instructions," while Venireperson Carlock was not struck, even though Carlock "expressed concern over following instructions regarding reasonable doubt." (Doc. 1 at 9.) Though not stated in Frairson's Petition, the implication from his brief on direct appeal is that Venireperson Carlock is Caucasian. (Doc. 6-3 at 20.) In essence, Frairson appears to be arguing that the State's proffered explanation for striking Venireperson Miller was pretextual because the State did not strike a similarly situated Caucasian venireperson: Venireperson Carlock.

First, the argument that the State's striking of Venireperson Miller—or any venireperson, for that matter—was pretextual in virtue of there being similarly situated non-African American venirepersons who were not struck was not made in the trial court proceedings. Frairson concedes that this issue was not brought forward contemporaneously with his *Batson* challenges, (Doc. 6-3 at 37), nor was this argument present in his motion for a new trial, (Doc. 6-2 at 74–77.) The first time this argument appears on the record is in Frairson's direct appeal, in which he alleges that the State's proffered reasons for striking Venireperson Miller, along with Venirepersons Ward and Moore, were pretextual because similarly situated Caucasian venirepersons were not struck. (Doc. 6-3 at 12–14.) The Missouri Court of Appeals declined to consider this argument "[b]ecause [Frairson] raises the argument for the first time on appeal." (Doc. 6-5 at 12.)

Because the Missouri Court of Appeals denied this argument on procedural grounds, federal habeas review is barred. *Coleman*, 501 U.S. at 730. This Court cannot review this

14

argument within Frairson's claim unless he "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Clark*, 780 F.3d 876-77.  He has not done so.

Second, this argument fails on its merits because it rests on the incorrect assumption that Venirepersons Miller and Carlock were similarly situated.  The dissimilarity between the two venirepersons is alluded to even in Frairson's Petition itself.  In his Petition, Frairson alleges that Venireperson Carlock was struck because of a concern over following instructions, but critically states that Venireperson Miller was struck because of the same concern *plus* a concern over the number of questions she asked.  (Doc. 1 at 9.)  Moreover, the trial transcript shows that, during voir dire, Venireperson Miller asked clarifying questions, whereas Venireperson Carlock did not.  (Doc. 6-1 at 60–61, 73–74, 116–17, 119, 124, 187.)  These distinctions render Venirepersons Miller and Carlock to be dissimilarly situated.  The State's reasoning for striking Venireperson Miller was explicit in that it was due in part to her asking clarifying questions.  (Doc. 6-1 at 209.) There is no evidence in the trial transcript or Frairson's briefing that suggests Venireperson Carlock similarly asked clarifying questions.  Thus, Petitioner's claim fails.

Accordingly, Ground Three will be denied.

**4. Ground Four**

In his fourth and final ground for relief, Frairson argues that the trial court erred in failing to declare a mistrial or take other curative action after he allegedly was handcuffed to a chair in the courtroom in view of the jury. (Doc. 1 at 10.)

Frairson raised this issue on direct appeal.  (Doc. 6-3 at 22.)  The Missouri Court of Appeals held that Petitioner did not preserve this issue for appeal because he did not request a mistrial, seek

15

any curative action, or timely bring this issue to the trial court's attention. (Doc. 6-5 at 14.)  The Court also concluded that "[Frairson's] claim does not facially demonstrate that the trial court committed an evident, obvious, and clear error.  Nor does it facially establish that a miscarriage of justice has occurred.  Instead, [Frairson's] argument is speculative and disingenuous." *Id.*

Because the Missouri Court of Appeals decided this issue on procedural grounds and not on the merits, *Coleman* bars this Court from conducting habeas review.  501 U.S. at 730.  This Court is thus barred from reviewing Frairson's claim unless he "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Clark*, 780 F.3d 876-77.  Petitioner has not done so.

Frairson's claim also fails on its merits.  As was noted by the Missouri Court of Appeals:

> The record is devoid of any proof that any juror observed [Frairson] in shackles.  Indeed, during discussions with the trial court, defense counsel stated "…I'm not saying anyone saw it, but there was a handcuff there."  Additionally, the record shows that the trial-court judge was present in the courtroom at the time and did not see [Frairson's] restraints.  And two deputies shielded [Frairson] from the jury.

(Doc. 6-5 at 14.)  Petitioner's claim is thus speculative and contrary to the available evidence.  He has brought forth no evidence that demonstrates either that any juror saw him in handcuffs or that, if one did, it created prejudice against him.  To the contrary, the facts that the judge did not see Frairson in restraints and two deputies shielded Frairson from the jury constitute positive evidence that the jury *did not* witness Frairson in handcuffs in the manner he alleges.  Consequently, this Court finds no clear error in the trial court's refusal to declare a mistrial.  Frairson has not demonstrated that the trial court's decision or the Missouri Court of Appeals' upholding of that decision was contrary to or an unreasonable application of federal law.

Accordingly, Ground Four will be denied.

16

## V. Certificate of Appealability

To grant a certificate of appealability, a federal habeas court must find a substantial showing of the denial of a federal constitutional right. *See* 28 U.S.C. §2253(c)(2); *Hunter v. Bowersox*, 172 F.3d 1016, 1020 (8th Cir. 1999). A substantial showing is established if the issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). In this case, Frairson has failed to make a substantial showing of the denial of a constitutional right. The undersigned is not persuaded that the issues raised in his Petition are debatable among reasonable jurists, that a court could resolve the issues differently, or that the issues deserve further proceedings.

Accordingly, no Certificate of Appealability shall be issued.

## ORDER

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** that the instant Petition for a Writ of Habeas Corpus under 28 U.S.C. §2254 is **denied** and **dismissed with prejudice** by separate judgment entered this date.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Petitioner be denied a Certificate of Appealability if Petitioner seeks to appeal this Judgment of Dismissal.

So ordered this 12th day of September, 2025.

                                               *s/Abbie Crites-Leoni*
                                               ABBIE CRITES-LEONI
                                               UNITED STATES MAGISTRATE JUDGE